# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| CHASE BACHMAN and ANDREW NILES, | § § § | |
| Plaintiffs, | § § | |
| | § | CIVIL ACTION NO.: 3:25-CV-00284 |
| v. | § § | |
| MARIO SERRATOS and DORA MARTINEZ | § § § | |
| | § | JURY DEMAND |
| Defendants. | § § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Chase Bachman and Andrew Niles file this First Amended Complaint against Defendant Mario Serratos and Dora Martinez and, in support of their causes of action, would respectfully show the Court the following:

### I.   THE PARTIES

1. Chase Bachman and Andrew Niles are Washington residents who own a single-family residence in Galveston County, Texas.

2. Defendants Mario Serratos and Dora Martinez are residents and citizens of Harris County, Texas. Defendants have represented that the correct name of Defendant is Mario Serratos, rather than Mario Martinez as alleged in Plaintiffs' Original Petition filed in state court. Plaintiffs amend their pleadings accordingly.

3. Defendants run a flooring company called K & J Flooring. "K & J Flooring" is a trade name under which Defendant Dora Martinez does business, and it is duly registered in

Harris County, Texas. Defendants may be served with process at 14418 Brownsville Street, Houston, Texas 77015.

## IV.    JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiffs Chase Bachman and Andrew Niles are residents and citizens of the State of Washington. Defendants Mario Serratos and Dora Martinez are residents and citizens of the State of Texas.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Galveston County, Texas, which is within the Southern District of Texas, Galveston Division.

## V.    BACKGROUND

6. Plaintiffs entered into an agreement with K & J Flooring ("K & J") in early February 2024, for the installation of wood and tile flooring in their historical home. The original bid was a little more than $10,000 and included surface refinishing.

7. Shortly thereafter, Defendants informed Plaintiffs that almost 90% of the original wood flooring downstairs needed to be removed due to being deemed unsalvageable. This was surprising, as no other contractor had recommended this action, and a significant reason for purchasing the Galveston property was its original wood floors and doors.

8. The parties agreed that Defendants would install heart pine, a hardwood flooring valued at $4.99 per square foot. Instead, upon information and belief, Defendants installed Missouri pine, a materially softer and less durable wood. This unapproved substitution of inferior materials has caused significant damage: the flooring surface is now marred by indentations and

impressions resulting from the ordinary placement and movement of household furniture and objects.

9. In May 2024, the flooring upstairs began to suffer from installation issues, including buckling and rippling due to not allowing the flooring to properly acclimate to the humidity and conditions within the home.

10. Despite Plaintiffs' request for immediate action, Defendants did not address the problem until August 2024, at which time they attempted to correct the issue.

11. However, Defendants' efforts were insufficient, as they used incorrect boards, improperly sanded and planed the flooring, and failed to nail entire sections correctly. The issues with the flooring persisted, with boards rising within two days.

12. Plaintiffs contacted Defendants about the construction defects multiple times, but rather than taking responsibility for the substandard work, Defendants attempted to deflect blame onto other parties.

13. Additionally, Defendants failed to reinstall a vent in the downstairs half-bathroom prior to laying the plywood subfloor. This oversight led to a duct expelling cool air beneath the home, which resulted in an unreasonably high electric bill during Spring-Summer 2024. When Plaintiffs alerted Defendants to this issue, she dismissed it as "not a big deal."

14. By January of 2025, the repercussions of Defendants' negligence continued. Plaintiffs had to pay for rodent control services when it was discovered that gaps in the subfloor allowed rodents to enter the home. This issue was compounded by a malfunction in the HVAC system, which had been damaged by a rodent that entered the attic and caused damage to the fan motor. To remedy the situation, Plaintiffs were forced to take out a small business loan, as their

personal funds were exhausted, to ensure the work was completed properly by a qualified contractor.

## VI. CONDITIONS PRECEDENT

15. Plaintiffs have satisfied all conditions precedent to filing this action.

16. Plaintiffs provided Defendants with written notice of their claims more than sixty days prior to filing suit, as required by both Chapter 27 of the Texas Property Code (the "Residential Construction Liability Act" or "RCLA") and § 17.505(a) of the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41 et seq. Plaintiffs' notices were sent by certified mail, return receipt requested, and described in reasonable detail the defects, damages, and statutory violations forming the basis of this action.

17. Such notices were mailed on March 20, 2025 and again on June 25, 2025. Defendants did not sign the return receipt or accept delivery, demonstrating a further attempt to evade accountability. *See* Ex. A.

18. Accordingly, all statutory prerequisites to filing suit under the RCLA and DTPA have been satisfied or waived.

## VI.     CAUSES OF ACTION

### CAUSE ONE: BREACH OF CONTRACT

19. Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

20. Plaintiffs and Defendants entered into a valid and enforceable agreement for the installation and refinishing of wood and tile flooring in Plaintiffs' Galveston residence. The terms of this agreement were formed through oral discussions and confirmed by written communications between the parties, including text messages.

**Plaintiffs' First Amended Complaint**
**Page 4**

21. Defendants were contractually obligated to supply and install heart pine flooring.

22. Plaintiffs fully performed under the contract and paid over $31,000 for the work.

23. Defendants breached the contract by failing to perform in a professional and workmanlike manner, including:

- Installing incorrect and inferior materials;
- Performing defective and incomplete work; and
- Failing to correct known issues after notice.

As a direct result of Defendants' breach, Plaintiffs suffered significant damages.

## CAUSE TWO: NEGLIGENCE (In the alternative)

24. Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

25. In the alternative to their breach of contract claim, Plaintiffs allege that Defendants owed them an independent duty to perform flooring installation services with reasonable care and skill.

26. Defendants breached that duty by, among other things:

- Purchasing the incorrect flooring;
- Installing flooring that was of an unsuitable grade;
- Tiling over a vent in the downstairs bathroom; and
- Improperly installing the flooring (both hardwood and tile) in Plaintiffs' home.

27. As a direct and proximate result of Defendants' negligence, Plaintiffs suffered significant damages.

## CAUSE THREE: BREACH OF IMPLIED WARRANTY OF GOOD AND WORKMANLIKE PERFORMANCE

28. Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

29. Defendants owed Plaintiffs an implied warranty that their work would be performed in a good and workmanlike manner. Under Texas law, this warranty applies to services involving the repair or modification of existing tangible property. *See Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349 (Tex. 1987); *Flying J Inc. v. Meda, Inc.,* 373 S.W.3d 680 (Tex. App.—San Antonio 2012, no pet.).

30. The work performed by Defendants, including removal of portions of Plaintiffs' existing hardwood flooring and the installation of replacement planks, constituted repair and modification of an existing structure (a historic home's floors), not merely the sale of goods. Accordingly, Defendants were required to perform these services with the quality and skill that a person of ordinary prudence in the trade would exercise.

31. Defendants breached this implied warranty by, among other things, improperly installing the flooring, using substandard or unacceptable materials, and failing to complete the work in a diligent and skillful manner.

32. As a direct result of these breaches, Plaintiffs have suffered damages including, but not limited to, the cost of replacement, diminution in value of their home, and related consequential damages.

33. Plaintiffs have suffered damages as a result of this breach.

**CAUSE FOUR: DECEPTIVE TRADE PRACTICES**

34. Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

35. Plaintiffs are "consumers" as defined by the DTPA because they sought and acquired flooring installation services for a personal, family, or household purpose—namely, the renovation of their residential home in Galveston County.

36. Defendants, doing business under the unregistered name "K & J Flooring," engaged in false, misleading, or deceptive acts or practices that were a producing cause of damages to Plaintiffs, in violation of § 17.46(b) of the DTPA, including but not limited to:

- Representing that services had sponsorship, approval, characteristics, uses, or benefits that they did not have (§ 17.46(b)(5));

- Representing that services were of a particular standard, quality, or grade, when they were of another (§ 17.46(b)(7));

- Advertising goods or services with the intent not to sell them as advertised (§ 17.46(b)(9));

- Failing to disclose known material defects or limitations in the goods or services to induce Plaintiffs into the transaction (§ 17.46(b)(24));

- Breaching express and implied warranties, including the implied warranty of good and workmanlike performance of services.

37. Specifically, Defendants represented that they would use heart pine flooring but instead substituted Missouri pine, a significantly cheaper material, without Plaintiffs' knowledge or consent.

38. Defendants failed to allow materials to properly acclimate before installation, installed defective and unfit flooring, and concealed critical construction defects (such as tiling over an active vent). Their failures were not isolated mistakes but part of a pattern of deceptive conduct intended to extract additional money from Plaintiffs while avoiding accountability.

39. Plaintiffs relied on Defendants' representations in good faith, reasonably believing that they were hiring qualified professionals. The flooring project was a significant investment in their historic home, which they purchased in part for its original character and hardwood flooring.

40. As a result of Defendants' conduct, Plaintiffs experienced substantial economic damages, including:

- Overpayment of more than $31,000 for substandard work and inferior materials;
- Cost of replacement materials and emergency repairs;
- Increased utility bills from construction-related HVAC inefficiencies;
- Rodent infestations due to construction gaps;
- Damage to their HVAC system requiring replacement of the fan motor;
- The need to take out a small business loan to correct Defendants' poor workmanship.

41. Additionally, Plaintiffs suffered mental anguish as a result of Defendants' knowing and intentional conduct. Plaintiffs endured months of stress and emotional distress caused by the inability to safely and fully use their home, compounded by escalating costs, unanswered communications, deceptive conduct, and the physical discomfort of living in an unstable and unsafe environment.

42. Defendants' violations were knowing and intentional within the meaning of §§ 17.45 and 17.50(b)(1)–(2) of the DTPA. Defendants were aware that they were using substandard and incorrect materials and that their workmanship was flawed. Despite repeated notices and opportunities to correct the defects, both informally and via statutory notice letters,

Defendants failed to remedy the issues and instead actively evaded service and attempted to conceal their whereabouts by using an invalid address.

43. Because Defendants acted knowingly and intentionally, Plaintiffs are entitled to recover up to three times their economic damages and mental anguish damages, in addition to their actual damages and attorneys' fees. Tex. Bus. & Com. Code § 17.50(b)(1)–(2).

## VIII. JURY TRIAL DEMANDED

44. Plaintiffs respectfully demand a trial by jury.

## IX. PRAYER

Plaintiffs pray that this citation issue and be served upon Defendants in a form and manner prescribed by law, requiring that Defendant appear and answer, and that upon final hearing, Plaintiffs be awarded (i) economic damages; (ii) mental anguish damages; (iii) treble damages under § 17.50(b)(1)–(2); (iv) attorneys' fees and costs; (v) prejudgment and post-judgment interest as allowed by law; and (vi) all other relief, at law or in equity, as the Court deems just and proper.

Dated: September 25, 2025

Respectfully submitted,

**Fertitta & Givens, PLLC**

By: /s/ *Sarah Jessica Givens*

Sarah Jessica Givens
State Bar No.24136483
jessica@fertittagivens.com
Elizabeth McEntee
State Bar No. 24083100
beth@fertittagivens.com
Michael Fertitta
State Bar No. 24140420
michael@fertittagivens.com
1973 W. Gray, Suite 9

                                                Houston, TX 77019
                                                713-258-9888

                                                ***Attorneys for Plaintiffs***

Case 3:25-cv-00284     Document 10     Filed on 09/25/25 in TXSD     Page 10 of 13

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was duly served upon counsel of record in accordance with the Federal Rules of Civil Procedure by electronic service on September 25, 2025.

/s/ *Sarah Jessica Givens*
Sarah Jessica Givens

**Exhibit A**

**Undelivered RCLA/DTPA Notice Sent via USPS Certified Mail, Return Receipt Requested**



**Tracking Number:**

**9589071052702254063920**

 Copy       Add to Informed Delivery

**Latest Update**

Your item arrived at our USPS facility in NORTH HOUSTON TX DISTRIBUTION CENTER on September 5, 2025 at 1:51 pm. The item is currently in transit to the destination.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

**Unclaimed/Being Returned to Sender**
HOUSTON, TX 77013
July 9, 2025, 8:41 am

**Reminder to Schedule Redelivery of your item**
July 2, 2025

**Notice Left (No Authorized Recipient Available)**
HOUSTON, TX 77015
June 27, 2025, 2:41 pm

**Arrived at USPS Regional Facility**
SOUTH HOUSTON PROCESSING CENTER
June 26, 2025, 9:27 am

**Arrived at USPS Regional Facility**
NORTH HOUSTON TX DISTRIBUTION CENTER
June 25, 2025, 9:56 pm

**USPS in possession of item**
HOUSTON, TX 77019
June 25, 2025, 3:45 pm

**Hide Tracking History**

Plaintiffs' First Amended Complaint
Page 13